Lynord Lee **HATFIELD**, Libellant,

v.

**BROWN & ROOT, INC.**, etc., **Respondent.**

No. 964.

United States District Court
E. D. Texas,
Beaumont Division.

Sept. 29, 1965.

---

Howard C. Sadler, Sadler & Sadler, Port Arthur, Tex., for libellant.

George Duncan, Wells, Duncan & Beard, Beaumont, Tex., for respondent.

FISHER, District Judge.

Libellant, Lynord Lee Hatfield, brought this libel in personam against his employer, Brown & Root, Inc., under the admiralty jurisdiction of the Court for maintenance, cure and damages under Title 46 U.S.C.A. § 688 (Jones Act). The alleged accident occurred on November 28, 1963, in the vicinity of Dauphin Island, Mobile Bay, State of Alabama, where the Respondent was engaged in dredging operations. Libellant contends that he was injured in getting off the Dredge Tender FLOYD S onto the beach, while in the service of the Respondent, and that as a result of said injuries he is totally disabled and claims damages in the sum of approximately $537,000.00.

The Court, after considering the pleadings, stipulations of fact, and written briefs of counsel, makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

### 1.

At all times material to this lawsuit, Respondent Brown & Root, Inc. was the owner and operator of the Dredge HERBERT J; the Dredge Tender or Tug FLOYD S; and other equipment necessary to operate said Dredge.

### 2.

On Thanksgiving Day, November 28, 1963, the Dredge HERBERT J and the Tender FLOYD S, were in the vicinity of Dauphin Island, Mobile Bay, State of Alabama, within the navigable waters of the United States.

### 3.

The dimensions of the Tender FLOYD S were approximately as follows: length 32 feet; width 10 feet; depth aft to midship 5 feet; bow 5 feet 8 inches (main deck to keel). The FLOYD S was of steel construction; the keel from bow to stem was straight; the bottom sloped from the keel on up to the sides; and the deck was flat from stern to midship where it began a gradual rise to a point on the bow. The splashboards and bow stem or bit rose approximately 12 inches and 18 inches respectively above the deck. A series of three or four tires cut in half and chained together forming a bumper were attached on both forward sides of said tender, the tops of the tires being approximately even with the deck of the tender.

### 4.

The purpose of the Dredge Tender of Tug FLOYD S was to carry the crew back and forth from the Dredge to Dauphin Island.

### 5.

The Court finds that the Respondent, Brown & Root, Inc. did not provide any wharf or dock on Dauphin Island; that the Respondent made no arrangement for the use of a dock or wharf on Dauphin Island; that the crew of the Dredge HERBERT J was ordered not to use any dock or wharf on Dauphin Island.

### 6.

The Court finds that the only available method of disembarking on to Dauphin Island was to run the FLOYD S on to the beach and go over the bow. The Court further finds that the crew was instructed to follow such a procedure and had so done for more than a month prior to the date in question.

**7.**

The deck of the Tender FLOYD S was approximately 6 feet in height when her bow was run onto the beach.

**8.**

The Court finds that the Tender FLOYD S was not equipped with any type of ladder or gangplank. Further, there were no appliances provided to assist the crew in getting off the FLOYD S.

**9.**

I find that there were no reasonably safe means of disembarking from the Tug FLOYD S furnished to the crew thereof, and in specific, Lynord Lee Hatfield.

**10.**

Libellant, Lynord Lee Hatfield, was a seaman, a member of the crew and in the service of the Dredge HERBERT J. The Court finds that Libellant sustained personal injuries on the evening of Thanksgiving Day, Thursday, November 28, 1963, while disembarking from the bow of the Tender FLOYD S and landing on the beach below.

**11.**

The Court further finds that at the time said injuries were incurred Libellant, Lynord Lee Hatfield, was in the service of Respondent, Brown & Root, Inc., and "in the course of his employment" as the phrase is used in the Jones Act, 46 U.S.C.A. § 688.

**12.**

The Court finds from the above facts that Respondent was negligent in:

(a) Failing to supply some type of ladder or gangplank or other appliance to assist the crew, and in particular, the Libellant, in getting off the Tender FLOYD S.

(b) Failing to provide a wharf, berth or dock for the use of the crew, and in particular, the Libellant, of the Dredge HERBERT J.

(c) Directing, ordering and requiring that the crew. and in particular, the Li-

bellant, to go over, step from, drop down off, or jump from the bow of the vessel in order to go ashore.

**13.**

I find that since no reasonably safe means of egress was furnished, the Tug or Dredge Tender FLOYD S was unseaworthy. Superior Oil Co. v. Trahan, 322 F.2d 234 (5th Cir. 1963), Tate v. C. G. Willis, Inc., 154 F.Supp. 402 (E.D. Va.1957).

**14.**

The Court finds that the negligence of the Respondent as well as the unseaworthy condition of the Dredge Tender FLOYD S were a cause of the Libellant sustaining injuries on the 28th day of November, 1963.

**15.**

The Court finds that the injuries sustained by Libellant while a member of the crew of the Tender FLOYD S caused him to suffer a herniation or rupture of the lumbar 5 and sacrum 1 disc. By reason of said injuries, he was hospitalized in Foley, Alabama from December 1st to December 9th, 1963, and again at the Doctor's Hospital in Mobile, Alabama from December 22nd, 1963 to December 31st, 1963, during which time a myelogram and laminectomy were performed.

**16.**

That Libellant, Lynord Lee Hatfield, returned to work for Respondent performing light duties on January 10, 1964, until March 27, 1964, during which period his gross earnings were One Thousand Five Hundred Seventy-Four and 20/100 Dollars ($1,574.20).

**17.**

I find that Libellant was totally disabled from November 28, 1963 to January 1, 1965, and that since the latter date the Libellant has and will have a permanent partial disability to work and earn money.

**18.**

I find the Libellant prior to his injury earned an average of $750.00 per month

and that he lost wages from the date of injury to the date of January 1, 1965. I find $8,000.00 to be the amount of lost wages to be awarded Libellant in addition to the wages paid him during this period.

### 19.

I further find that Libellant has and will suffer a loss of his earning capacity for the rest of his work-life expectancy, which I now find to be thirty-two (32) years from January 1, 1965. Further, I find a permanent partial loss of future earning capacity, which taking into consideration the substantial raise in the hourly wage rate since Libellant's injury and the raises which in all reasonable probability there will be in the future, discounted to a present cash value, to be the aggregate sum of $125,000.00.

### 20.

I find that Libellant incurred pain and suffering as a result of the injuries sustained by reason of the negligence of the Respondent and the unseaworthiness of the vessel and award for such pain and suffering the sum of $10,000.00.

### 21.

I find that as of the date of trial, Libellant has incurred medical expenses in the amount of $901.23. I further find that an additional sum in medical expenses will be incurred in the future which is also directly attributable to the injury Libellant sustained. I find that Respondent is obligated to pay the sum of $5,000.00, including the above sum of $901.23, for Libellant's past and future medical expenses which I find to be necessary and reasonable.

### 22.

The Court finds the Libellant guilty of contributory negligence in bringing about the accident in question and his injuries flowing therefrom, in that he did not use ordinary care when he disembarked from the Tug FLOYD S on the date in question.

### 23.

The Court finds that the accident and injuries in this case therefore resulted from the unseaworthy condition of the Dredge Tender FLOYD S as well as the combined negligence of the Respondent and the Libellant himself, and the Court finds that Libellant's contributory negligence contributed to his accident and injuries to the extent of forty (40) per cent. All awards made above shall be adjusted accordingly.

### 24.

I find that Libellant is entitled to maintenance from the date of injury to January 10, 1964, and from March 28, 1964 to January 1, 1965, at which time Libellant reached maximum recovery, at the stipulated rate of $8.00 per day. However, I find that the Respondent is not obligated to pay said sum in view of the award made in Findings of Fact Number 18.

## CONCLUSIONS OF LAW

### 1.

The Court has jurisdiction of the parties and the subject matter.

### 2.

The vessel FLOYD S was unseaworthy; and further, in respect to Libellant's right to recover under the Jones Act, I find actionable negligence by Respondent. Superior Oil Co. v. Trahan, supra. The unseaworthiness of the vessel as well as the combined negligence of the Libellant and Respondent caused Libellant's injuries and resulting disability.

### 3.

Libellant is entitled to recover from Respondent, Brown & Root, Inc., the amount of damages above enumerated with interest from the date of judgment until paid.

### 4.

All costs of Court are adjudged against the Respondents. Libellant to submit a form of judgment within fifteen (15) days from this date.